FILED
2023 OCT 18 PM 1:01
CLERK
U.S. DISTRICT COURT

TRINA A. HIGGINS, United States Attorney (7349)
TRAVIS K. ELDER, Assistant United States Attorney (11987)
Attorneys for the United States of America
111 South Main Street, Ste. 1800 | Salt Lake City, Utah 84111
Tel: 801.524.5682 | Fax: 801.325.3399 | travis.elder@usdoj.gov

UNITED STATES DISTRICT COURT

DISTRICT OF UTAH

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>$593,470 in U.S. Currency,<br><br>Defendant. | Case No.<br><br>Case: 4:23−cv−00095<br>Assigned To : Nuffer, David<br><br>**VERIFIED COMPLAINT FOR FORFEITURE *IN REM***<br><br>Judge |
|---|---|

Pursuant to Supplemental Rule G(2) of the Federal Rules of Civil Procedure, the United States of America files this *in rem* action for forfeiture and alleges:

## NATURE OF THE ACTION

1.	This is a forfeiture action under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C). The United States seeks the forfeiture of $593,470 in U.S. currency ("Defendant Property") because it is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. The Defendant Property is also subject to forfeiture under 18 U.S.C. § 981(a)(1)(C), because it was property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952, a specified unlawful activity as defined in 18 U.S.C. §§ 1957(c)(7) and 1961(1).

Jefferson

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction 28 U.S.C. §§ 1345 and 1355(a) and in rem jurisdiction is property under 28 U.S.C. § 1355.

3. Venue in this Court is proper under 28 U.S.C. §§ 1355(b)(1)(A) and 1391(b) because acts giving rise to the forfeiture or a substantial part of the events or omissions giving rise to the claim occurred in the District of Utah, and under 28 U.S.C. § 1395 because the Defendant Property was seized in the District of Utah.

## PARTIES

4. Plaintiff is the United States of America.

5. The Defendant Property consists of the $593,470 in U.S. currency.

6. The Defendant Property was seized by the Department of Homeland Security ("HSI") in Washington County, Utah on April 19, 2023. The Defendant Property is currently deposited into an account with the Immigration and Customs Enforcement Suspense account.

7. Victoria Jefferson, represented by attorney Brian Silber, filed an administrative claim to the Defendant Property in HSI's administrative forfeiture proceeding against the Defendant Property. Victoria Jefferson is over the age of 18.

## FACTS

8. On or about Wednesday, April 19, 2023, HSI St. George, in conjunction with the Washington City Police Department and Washington County Sheriff's Office located and seized $593,470 in U.S. currency near St. George, Utah during a traffic stop.

**April 19, 2023 Traffic Stop in Washington County, Utah**

9. Officers observed a white box, transport truck traveling southbound on I-15 in Washington County, Utah. While observing the truck, officers observed multiple traffic infractions in violation of Utah law. Officers saw the truck: 1) cross over the center line at mile marker 26.5; 2) cross over the fog line at mile marker 22; and 3) cross the center lane of travel and the fog line multiples times from mile marker 21.5 to mile marker 20. Officer Tanner also observed the driver manipulating his cell phone while driving.



10. Based the traffic infractions, Officer Tanner with the Washington County Police Department initiated a traffic stop at mile marker 18. The driver was identified as Tonjai Hardy. Officers notified Hardy of the multiple violations they observed. Hardy told officers the load in

the truck needed to be delivered by Friday and he was making phone calls as he was driving and that caused him to be distracted.

11. Officers asked Hardy to sit in the passenger seat of the patrol vehicle while they prepared warning citation for the traffic violations.

12. As Officer Tanner was in the process of issuing the warning citations, he asked Hardy for consent to deploy a canine to sniff the exterior of the vehicle to ensure that Hardy was not transporting a large sum of narcotics or currency tied to a criminal conduct. Hardy gave consent and told Officer Tanner that there were not any large sums of money or narcotics inside of the truck.

**K-9 Indication**

13. K-9 Deputy Dan Montgomery with the Washington County Sheriff's Officer had his canine, narcotics dog Cyrus ("K-9 Cyrus"), conduct a free air sniff of the vehicle. Deputy Montgomery is a certified handler of K-9 Cyrus. K-9 Cyrus is a certified narcotics odor detection canine that is trained to detect illicit odors of marijuana, cocaine, methamphetamine, and heroin.

14. K-9 Cyrus had an obvious change in behavior while he sniffed under the trailer to the rear of the driver's side of the truck. These changes in behavior included head checking alerts, closed mouth nasal purges, and sitting and staring at the underside of the trailer's rear, which are alerting behaviors that K-9 Cyrus is trained to make when locating a narcotic odor and trying to get closer to its source.

15. Based on K-9 Cyrus's positive indication of narcotics odor providing probable cause, officers searched the truck.

**The Search**

16. Officers observed two large metal after-market boxes welded to the under carriage of the vehicle. The compartments were located on the driver's side of the vehicle in the middle of the trailer.

17. Officers knocked on the metal boxes to determine whether they had contents. Based on the echo type sound, the rear compartment did not sound like it had contents. However, the thudding sound from the front compartment indicated to officers that it did have contents inside it. Based on their training and experience in after-market compartments and contraband smuggling, the investigators know that drug traffickers sometimes utilize such hidden compartments to smuggle narcotics and the proceeds of narcotics and to avoid detection by law enforcement.

18. Officer Tanner used his cell phone camera to reach over the top of the compartment to view its contents. He saw several duct-taped packages with the marking "10k" written on top.

19. There were three large pallets of merchandise located directly over the opening of the compartments. To safely search the compartments using a forklift, officers took the vehicle and finished searching it at the Washington City yard.

20. Officers used a forklift to remove the pallets of merchandise to gain access to the compartments. Once removed, officers observed a piece of plywood that appeared to be brand new directly over the compartments. Officers removed the plywood and opened the compartments.



21.     The front compartment had a blue suitcase which contained several individual bundles of cash wrapped in duct tape also marked "10k." There were also several loose bundles of cash in the compartment wrapped in duct tape with the markings of "10k" on the outside. Additionally, in the compartment was a small, children's backpack with a Super Mario Bros logo. Inside this backpack were more bundles of cash wrapped in duct tape and marked with the "10k" markings.



22. Officer Tanner later opened all the duct-taped packages and found they contained currency in vacuum sealed bags wrapped in duct tape. The currency included denominations of 10's, 20's, 50's, and l00's. From their training and experience, the investigators know that drug traffickers often package their drug proceeds in vacuum sealed bags to help conceal the odor of narcotics. The officers were also aware of drug traffickers commonly transporting narcotics northbound on I-15 (from California after their purchase, which is a major supplier of narcotics) and transporting narcotic proceeds southbound on I-15 (towards California to purchase narcotics).

**Second Interview of Hardy**

23. After investigators located the Defendant Property in the hidden compartment, HSI Special Agent Hirschi and TFO Hirschi interviewed Hardy. After receiving his *Miranda* warning, Hardy said he was willing to speak with the investigators. Hardy explained that the truck was in the mechanic shop for a few weeks before he picked it up. Hardy said that it was possible that the money was hidden in the vehicle by the mechanics while the vehicle was in the shop. Hardy continued to insist that he had no idea that the money was hidden in the vehicle. TFO Hirschi asked if Hardy was willing to sign a form stating that he is not the owner of the money. Hardy agreed because the money was "not his." TFO Hirschi gave Hardy DHS abandonment form 4607, which Hardy signed. Hardy was then released and departed from the scene.

## FIRST CAUSE OF ACTION
## 21 U.S.C. § 881(a)(6)
## (forfeiture of property related to drug trafficking)

24. The United States reasserts all allegations previously made.

25. Under 21 U.S.C. § 881(a)(6), "moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of" 21 U.S.C. § 801 et seq. are subject to forfeiture.

26. Under 21 U.S.C. § 841(a), it is "unlawful for any person knowingly or intentionally . . . to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." An attempt or conspiracy to do the same is also prohibited by 21 U.S.C. § 846.

27. As set forth above, the Defendant Property is moneys furnished by any person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or property intended to facilitate such an exchange in violation of 21 U.S.C. §§ 841(a) and/or 846. This property is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6).

## SECOND CAUSE OF ACTION
## 18 U.S.C. § 981(a)(1)(C)
### (forfeiture related to violation of the Travel Act)

28.     The United States reasserts all allegations previously made.

29.     Under 18 U.S.C. § 981(a)(l)(C), any property which constitutes or is derived from proceeds traceable to an offense constituting a "specified unlawful activity," or a conspiracy to commit such offense, is subject to forfeiture to the United States.

30.     Under 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1), interstate travel or transportation in aid of racketeering enterprises in violation of 18 U.S.C. § 1952 is a specified unlawful activity.

31.     18 U.S.C. § 1952(a) prohibits, inter alia, any individual who uses "any facility in interstate or foreign commerce,":

> with the intent to –
>
> (1) distribute the proceeds of any unlawful activity; or [ ]
> (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity"

from thereafter performing or attempting to perform the conduct described in subparagraphs (1) and (3) above.

32.     18 U.S.C. § 1952(b) specifically includes within the definition of "unlawful activity" "any business enterprise involving . . . narcotics or controlled substances (as defined in section 102(6) of the Controlled Substances Act)."

33. As set forth above, the Defendant Property is property which constitutes or is derived from proceeds traceable to a violation of 18 U.S.C. § 1952. This property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(l)(C).

## **REQUEST FOR RELIEF**

WHEREFORE, the United States respectfully asserts that the Defendant Property is subject to forfeiture by the United States under 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

The United States further requests:

A. That, pursuant to the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, Rule G(3)(b)(ii), the Clerk of the Court issue a Summons and Warrant of Arrest *in Rem* as to the Defendant Property.

B. That Notice of this action be given to all persons known or thought to have an interest in or right against Defendant Property;

C. That a Judgment of Forfeiture be decreed against Defendant Property;

D. That upon the issuance of a Judgment of Forfeiture, Department of Homeland Security, or its delegate dispose of Defendant Property according to law; and

E.  That the United States receive its costs of court and all further relief to which it is entitled.

Dated this 18th day of October, 2023.

TRINA A. HIGGINS<br>
United States Attorney<br>
<br>
_/s/ Travis K. Elder_<br>
TRAVIS K. ELDER<br>
Assistant U.S. Attorney

## VERIFICATION

I am a Special Agent with the Department of Homeland Security. As a Special Agent with the HSI, my duties and responsibilities include participating in the investigation and prosecution of persons who violate federal laws.

I have read the contents of the foregoing Verified Complaint for Forfeiture *In Rem* and verify under penalty of perjury pursuant to 28 U.S.C. § 1746 that the statements contained therein are true and correct to the best of my knowledge and belief.

Executed on this __18__ day of October, 2023.

_____
JED HIRSCHI, Special Agent
Department of Homeland Security